*In re* MARRIAGE OF HYLA JANE DOBBS, Petitioner-Appellant, and ALVA LEE DOBBS, Respondent-Appellee.

Fifth District    No. 5—03—0644

Opinion filed June 7, 2005.

Joshua M. Bradley, of Law Offices of Harvey & Bradley, L.L.C., of Mt. Vernon, for appellant.

Hallin B. Burgan and Timothy R. Neubauer, both of Neubauer, Hanson & Overstreet, P.C., of Mt. Vernon, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, Hyla Jane Dobbs, appeals from an order of the circuit court of Jefferson County holding her in indirect civil contempt for her interference with visitation between her Down's syndrome daughter, Jodi, age 38, and respondent, Alva Lee Dobbs, in violation of the parties' 1991 divorce decree, and requiring that Jodi continue visitation with respondent. On appeal, petitioner argues (1) the trial court lacked subject matter jurisdiction to order visitation between Jodi and respondent because Jodi was an adult at the time the visitation order was entered in 1991 and (2) the trial court erred in holding petitioner in indirect civil contempt. For the following reasons, we agree with petitioner and reverse the order of the circuit court.

FACTS

The parties were married on January 1, 1955. Two children were

born during the marriage, Janalee and Jodi. Jodi was born with Down's syndrome on January 29, 1967. A judgment of the dissolution of the marriage was entered on April 29, 1991. At the time the judgment of dissolution was entered, Jodi was 24 years old. The judgment of dissolution incorporated a marital settlement agreement, dated April 25, 1991, in which the parties agreed that petitioner would have primary physical custody of Jodi and that respondent would have reasonable visitation.

No guardian has ever been appointed for Jodi. While petitioner filed a petition for a guardianship and a petition for the appointment of a guardian *ad litem* for Jodi, the circuit court has yet to act on these petitions. Also, Jodi has not been declared a disabled adult pursuant to the Illinois Probate Act of 1975 (Probate Act) (755 ILCS 5/1—1 *et seq.* (West 2002)). Respondent testified that Jodi's verbal skills are very good but that she operates at about kindergarten level. Petitioner testified that Jodi cannot make financial decisions on her own.

Petitioner lives in Illinois, while respondent is retired and lives in Florida for most of the year. Respondent spends his summers in Illinois, and he has taken Jodi to Florida for winter vacations. On December 4, 2000, petitioner filed an emergency motion for a modification of child visitation in which she requested that respondent's December visitation with Jodi be rescheduled. On December 6, 2000, respondent filed an emergency petition for the enforcement of visitation and an answer to petitioner's motion for a modification. On February 20, 2001, the trial court entered a judgment against petitioner for costs and attorney fees incurred by respondent in attempting to exercise his December 2000 visitation.

Subsequent visitations were also denied. On August 18, 2003, respondent filed a petition to enforce the visitation as agreed to by the parties at the time of their divorce, after Jodi failed to participate in visitations as scheduled. The trial court entered a rule to show cause why petitioner should not be held in direct civil contempt for her failure to comply with the previous orders of the circuit court regarding visitation. A hearing was held, at which time petitioner testified that Jodi no longer wants to visit with respondent. According to petitioner, she has not done anything to discourage Jodi from participating in visitation and would like Jodi to maintain a relationship with him. She testified that she is willing to make Jodi available for visitation anytime Jodi wishes to visit with respondent but that she does not want to force Jodi to do so.

After hearing all the evidence, the trial court found that petitioner's denial of visitation was wilful and without cause or provocation. The trial court entered an order requiring visitation to occur, finding

petitioner in indirect civil contempt for failing to allow respondent visitation with Jodi as agreed, and ordering petitioner to pay respondent's attorney fees. Petitioner now appeals.

## ANALYSIS

Petitioner first contends that the trial court lacked subject matter jurisdiction to enter a visitation order pursuant to the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (Ill. Rev. Stat. 1991, ch. 40, par. 101 *et seq.* (now see 750 ILCS 5/101 *et seq.* (West 2002))) because Jodi was no longer a minor at the time the visitation order was entered. Respondent replies that the trial court in the domestic-relations case had jurisdiction to adjudicate all justiciable matters, including visitation between respondent and his Down's syndrome daughter, and that petitioner cannot challenge for the first time on appeal the trial court's jurisdiction where she accepted the benefits of the divorce decree. Respondent further replies that a lack of subject matter jurisdiction is not an appropriate basis for setting aside an agreement reached between the parties.

An order entered by a court without subject matter jurisdiction is void. *In re Estate of Steinfeld*, 158 Ill. 2d 1, 12, 630 N.E.2d 801, 806 (1994). A party cannot be held in contempt for violating a void court order. *In re Marriage of Santa Cruz*, 179 Ill. App. 3d 611, 620, 534 N.E.2d 636, 642 (1989). Whether a court has subject matter jurisdiction is a question reviewed *de novo*. *Keller v. Walker*, 319 Ill. App. 3d 67, 70, 744 N.E.2d 381, 383 (2001).

Respondent is correct that a trial judge sitting in the domestic relations division of the circuit court has the authority to hear all justiciable matters. *In re Marriage of Wojcicki*, 135 Ill. App. 3d 248, 251, 481 N.E.2d 939, 941 (1985). However, in the instant case, the circuit court was purporting to act under the Marriage Act rather than the Probate Act. Therefore, the circuit court's authority with respect to granting visitation is governed by the provisions of the Marriage Act rather than the Probate Act. See *In re Marriage of Casarotto*, 316 Ill. App. 3d 567, 570-71, 736 N.E.2d 1169, 1172 (2000) (*Casarotto*).

In *Casarotto*, a father moved to modify a dissolution judgment, requesting that he be granted visitation with his Down's syndrome adult son, Kevin. The trial court ordered visitation. On appeal, Kevin argued the circuit court lacked subject matter jurisdiction to enter a visitation order pursuant to the Marriage Act because he was no longer a minor at the time visitation was ordered. The *Casarotto* court determined that the circuit court lacked subject matter jurisdiction because under the Marriage Act a court does not have the authority to

grant an order of visitation with regard to an adult disabled person. *Casarotto*, 316 Ill. App. 3d at 571, 736 N.E.2d at 1172. In support of its determination, the *Casarotto* court first pointed out that under the Marriage Act a circuit court lacks jurisdiction to enter custody orders with respect to children who have attained the age of majority. Because visitation is a form of child custody, it therefore follows that the circuit court lacked jurisdiction to enter a visitation order against a person who had attained the age of majority. *Casarotto*, 316 Ill. App. 3d at 571, 736 N.E.2d at 1173.

The *Casarotto* court also reasoned that because the legislature did not specifically set forth that the visitation provisions were to apply to disabled adults, the legislature did not intend that result:

"[I]f the legislature had intended the visitation provisions to apply to disabled adults, it would have been a simple matter to so specify. For example, section 513 of the Marriage Act (750 ILCS 5/513 (West 1998)) provides for the support of 'non-minor children.' There is no similar language in either the custody or visitation provisions of the Marriage Act." *Casarotto*, 316 Ill. App. 3d at 571-72, 736 N.E.2d at 1173.

Finally, the *Casarotto* court based its determination on the fact that the Marriage Act and the Probate Act apply different standards.

Under the Marriage Act, the applicable standard in determining custody decisions is "the best interest of the child" (750 ILCS 5/602 (West 2002)), and the noncustodial parent is entitled to visitation unless "visitation would endanger seriously the child's physical, mental, moral[,] or emotional health" (750 ILCS 5/607(a) (West 2002)). The Probate Act does not use the best interests standard, and the subject of a guardianship petition is afforded rights not afforded to minors. For example, the subject of a guardianship petition has the right to notification of the proceedings and the right to tell the judge whom he or she prefers to have as a guardian (755 ILCS 5/11a—10 (West 2002)). The purpose in appointing a guardian is to "assist the ward in the development of maximum self-reliance and independence" (755 ILCS 5/11a—17(a) (West 2002)), and when making decisions on the ward's behalf, the guardian is ordered to make reasonable efforts to discern the ward's preferences and make decisions in accordance therewith (755 ILCS 5/11a—17(e) (West 2002)). *Casarotto*, 316 Ill. App. 3d at 572, 736 N.E.2d at 1173-74.

We are unconvinced by respondent's argument that *Casarotto* is distinguishable from the instant case and should not be followed on the basis that in *Casarotto* the visitation was ordered between a Down's syndrome adult and his "estranged" father, who had a history of using corporal punishment, and the Down's syndrome adult

expressed a preference against visitation. The fact that there is no such history in the instant case does not change our conclusion that here the circuit court lacked subject matter jurisdiction to enter a visitation order. We agree with petitioner that neither the behavior of the parties nor the relationship between the parties has any bearing on the issue of subject matter jurisdiction.

Likewise, we are unconvinced by respondent's argument that the agreement in the instant case amounts to a binding consent decree which cannot be amended or varied without the consent of each party. In support of his argument, respondent relies on *In re M.M.D.*, 213 Ill. 2d 105, 820 N.E.2d 392 (2004), in which a father petitioned for the modification of an order granting the maternal grandparents visitation with a child or for the termination of the order after the supreme court declared Illinois's grandparent visitation statute unconstitutional in *Wickham v. Byrne*, 199 Ill. 2d 309, 769 N.E.2d 1 (2002). The order from which the father appealed incorporated a visitation agreement reached by the parties prior to the statute being ruled unconstitutional in *Wickham*. The father argued that the preexisting agreement approved by the circuit court was invalidated by the *Wickham* decision. The supreme court disagreed, finding that the stringent standards for invalidating a consent decree had not been met. The stringent standards include the following:

> "A consent decree is based upon the agreement of the parties and is contractual in nature. [Citation.] It is a recordation of the parties' private agreement, not an adjudication of their rights. Once such a decree has been entered, it is generally binding on the parties and cannot be amended or varied without the consent of each party. [Citation.]
>
> An exception to this rule applies where the contract is void as contrary to public policy. Whether an agreement is contrary to public policy depends on the particular facts and circumstances of the case. [Citation.] The courts are reluctant to restrict the freedom of citizens to make their own agreements. Declaring a contract void and unenforceable is a power the courts therefore exercise sparingly. An agreement will not be held void, as being contrary to public policy, unless it is
>
> ' "clearly contrary to what the constitution, the statutes[,] or the decisions of the courts have declared to be the public policy or unless [it is] manifestly injurious to the public welfare." ' [Citation.]" *In re M.M.D.*, 213 Ill. 2d at 114, 820 N.E.2d at 399.

While the circumstances in *In re M.M.D.* did not meet these stringent standards, the circumstances in the instant case do.

Here, the circuit court acted pursuant to the Marriage Act in ordering visitation as agreed to by the parties. Jodi was 24 years old

when the divorce decree, which incorporated the marital settlement agreement's provisions regarding visitation, was entered. Jodi has never been declared a disabled adult under the Probate Act, and a guardian has not been appointed. The circuit court was without subject matter jurisdiction to order visitation. The intended relief of granting visitation would, however, be available to the parties pursuant to the Probate Act. See *In re Guardianship of Huseman*, 358 Ill. App. 3d 299 (2005).

As previously discussed, the standards of the Marriage Act and the Probate Act are significantly different. See *Casarotto*, 316 Ill. App. 3d at 572-73, 736 N.E.2d at 1173-74. Jodi's rights were not protected, and the fact that the circuit court could have granted visitation pursuant to the Probate Act does not overcome the jurisdictional defect in this case. While the results of this case may seem unduly harsh and technical, the jurisdictional defect cannot be overcome on the basis that the parties agreed to the arrangement for several years. A void order may be attacked at any time. *In re Estate of Steinfeld*, 158 Ill. 2d at 12, 630 N.E.2d at 806.

## CONCLUSION

For the foregoing reasons, the order of visitation is void. Petitioner cannot be held in contempt for violating a void order. Accordingly, the order of the circuit court of Jefferson County is hereby reversed.

Reversed.

DONOVAN, P.J., and CHAPMAN, J., concur.